**Vernon VARNER, Plaintiff–Appellant,**

v.

**Karen JOHNSON, Defendant–Appellee.**

No. 01–3284.

United States Court of Appeals, Seventh Circuit.

Argued June 6, 2002.

Decided July 18, 2002.

Before Hon. FRANK H. EASTERBROOK, Hon. DANIEL A. MANION, Hon. MICHAEL S. KANNE, Circuit Judges.

ORDER

Vernon Varner sued Amoco Oil Company and Karen Johnson after he slipped and fell outside an Amoco service station run by Johnson in Waukegan, Illinois. The district court granted Amoco summary judgment, but the case against Johnson proceeded to trial. A jury returned a verdict in Johnson's favor. Varner ap-

peals, arguing that the district court erred in instructing the jury. We affirm.

## I.

On February 5, 1997, Dr. Vernon Varner, his then-wife Mary, and his attorney, James Shipman, were in the Chicago metropolitan area to inspect documents in connection with a medical malpractice and products liability lawsuit. At about 8:00 a.m. Shipman stopped at an Amoco station operated by Karen Johnson. Unfortunately, when Dr. Varner got out of the car he slipped and fell, striking his head. Mary, who was a nurse, went to Dr. Varner's assistance. He was later treated for a three-inch laceration to his head, which required eight or nine staples, and also for a bone chip in his left elbow.

After Dr. Varner's fall, Shipman inspected the ground, seeing a patch of "black ice" of about three feet square near where Dr. Varner was lying. Shipman described the ice as: "[W]hat happens if you pour water, when it's freezing on a piece of pavement. It was not snow or slush that had been compacted or driven over; it was just clear ice, and there was a pinkish or reddish material that was in part of this. It wasn't all a constant hue, but it looked like someone had poured water to try to wash away a pinkish or reddish fluid."

Shipman then went into the station to, in his own words, "confront" the station attendant. Shipman asked the attendant, Roger Taylor, whether he had seen the fall, and Taylor said that he had not. Shipman then asked him whether he knew that there was black ice on the driveway, but Taylor did not respond. Shipman then told Taylor to write out a statement concerning the incident, which Taylor did, stating: "I did not see him fall on a small patch of ice, however, a customer asked me to call the police for assistance." With this statement in hand, Shipman returned to Dr. Varner and Mary. An ambulance then took Dr. Varner to the hospital. Karen Johnson arrived at the station a little later that morning, and Taylor informed her of the accident and showed her where it occurred. Johnson did not notice any ice in the area, but decided to salt the pump area where Dr. Varner fell anyway.

Dr. Varner eventually filed suit against Karen Johnson and Amoco alleging negligence. The district court granted Amoco summary judgment, but the case against Johnson, as the operator of the service station, proceeded to trial. At trial, in addition to the above evidence, the jury heard evidence that on the morning of Dr. Varner's fall there was no precipitation, either rain or snow, and that it was 30–31 degrees Fahrenheit.

The jury also heard Mary Varner's deposition testimony concerning the fall: "All of a sudden it was like in a split second he was down. He fell. It wasn't like he stumbled. It was like he was gone in an instant." She then described the area near Dr. Varner's fall, explaining that she did not recall seeing any ice, and that she would have noticed ice, but that she observed a pinkish-colored substance in the seams or cracks in the driveway. She explained that she did not know whether the pinkish-colored substance was liquid or solid, but explained that she "believe[d] it was like if there had been something like rain, and then its gotten cold and it's just kind of—you see the concrete, but it's like maybe there's just this roughened kind of—I don't know how to explain it. It's like you see sometimes on the ground." Dr. Varner also testified, but he did not know how the accident occurred and remembered little from the morning of the fall.

At the close of evidence, the court gave the jury Instruction 17:

The plaintiff claims that he was injured and sustained damage as a result of a fall on an unnatural accumulation of ice on the property of Karen Johnson that presented an unreasonable risk of harm to the plaintiff.

The plaintiff claims that Karen Johnson was negligent in one or more of the following ways:

a. Invited and allowed its customers, including Plaintiff, to use said service area when it knew or should have known that it was unsafe and dangerous to do so due to the unnatural accumulation of ice;

b. Failed to make a reasonable inspection of said service area.

Dr. Varner had requested a more extensive instruction, based on his alleged theory of the case, namely that Johnson was negligent because Johnson, or one of her employees, sprayed or dumped water over the pavement to wash away the pink substance, and that the water froze, creating the "black ice" on which he fell.[1] The district court rejected Dr. Varner's proposed instruction, concluding that the evidence did not support the instruction as drafted.

Following deliberations, the jury returned a verdict in favor of Johnson and against Dr. Varner. Dr. Varner filed a motion for a new trial, but the district court denied that motion. Dr. Varner appeals, arguing that the district court erred in rejecting his proposed jury instruction.

## II.

On appeal, Dr. Varner argues that the district court erred in refusing his proposed jury instruction because the evidence was sufficient to create "a reasonable inference that the Defendant created the condition upon which the Plaintiff fell." Specifically, Dr. Varner claims that the district court erred in striking subsections a and b of his proposed jury instruction. As excerpted above, subsection a presented a theory of negligence based on Johnson permitting and allowing ice to accumulate due to the manner in which she cleaned the surface of the service area, and subsection b presented a theory of negligence premised on Johnson causing and permitting an unnatural accumulation of ice to remain on the service area for an unreasonably long period of time. This court reviews jury instructions deferentially, considering only whether the instructions, taken as a whole, adequately inform the jury of the applicable law. *Molnar v. Booth*, 229 F.3d 593, 602 (7th Cir.2000). Courts may refuse jury instructions that

---

**1.** In its entirety, Dr. Varner's proposed Jury Instruction read:

The plaintiff claims that he was injured and sustained damage as a result of a fall on an unnatural accumulation of ice on the property of Karen Johnson that presented an unreasonable risk of harm to the plaintiff.

The plaintiff claims that Karen Johnson was negligent in one or more of the following ways:

a. permitted and allowed ice to accumulate in an unnatural manner on the walkway due to the manner in which it cleaned the surface of its service area;

b. caused and permitted an unnatural accumulation of ice to remain on the service area for an unreasonably long period of time;

c. invited and allowed its customers, including Plaintiff, to use said service area when it knew or should have known that it was unsafe and dangerous to do so due to the unnatural accumulation of ice;

d. failed to make a reasonable inspection of said service area;

e. failed to warn persons, such as the plaintiff, lawfully thereon, that there was an unnatural accumulation of ice on the service area; and

f. failed to provide a reasonably safe path around said accumulation of ice thereby causing Plaintiff to deliberately encounter said dangerous condition.

do not comport with the evidence. *Leon v. Caterpillar Indus., Inc.,* 69 F.3d 1326, 1344 (7th Cir.1995) ("A party is entitled to have his tendered instruction read to the jury only if the instruction is, first and foremost, supported by the evidence received at trial, and if: the instruction correctly states the law; it does not repeat material covered by other instructions; and the substantial rights of the party offering the instruction would be prejudiced if it were not given.").

Initially, we note that while his proposed jury instruction framed Dr. Varner's theory of the case as one involving an "unnatural accumulation" of ice, on appeal he claims that Johnson is liable, not under the law governing "unnatural accumulations of ice" but for "creating the condition upon which the Plaintiff fell." Johnson claims that Dr. Varner never presented this "creating the condition" theory of negligence to the district court. Rather, according to Johnson, Dr. Varner proceeded to trial based solely on an "unnatural accumulation of ice" theory.

To understand this distinction, a brief review of Illinois law, which the parties agree applies to this diversity case, is necessary. First, under Illinois law, the possessor of land generally owes no duty to prevent the natural accumulation of snow or ice. *Madeo v. Tri–Land Properties, Inc.,* 239 Ill.App.3d 288, 179 Ill.Dec. 869, 606 N.E.2d 701, 702 (Ill.App.Ct.1992). Therefore, Dr. Varner could not succeed by merely showing that he fell on ice occurring naturally on Johnson's premises. However, under Illinois law a landowner may be liable for negligence by failing to "prevent an unnatural accumulation on his property, whether that accumulation is the direct result of the owner's clearing of the ice and snow, or is caused by design deficiencies that promote unnatural accumulations of ice." *Webb v. Morgan,* 176 Ill. App.3d 378, 125 Ill.Dec. 857, 531 N.E.2d 36, 39 (Ill.App.Ct.1988). In addition to liability for the unnatural accumulation of ice, a landowner is also liable for slip and fall injuries "[i]f the plaintiff is injured by slipping on a foreign substance placed or left on the premises by the proprietor or its agent, ... whether [the landowner] knows of the dangerous conditions or not." *Lane v. Hardee's Food Sys., Inc.,* 184 F.3d 705, 707 (7th Cir.1999) (applying Illinois law).

Applying these principles, then, for Dr. Varner to have succeeded against Johnson on an "unnatural accumulation of ice" theory, he would have had to prove that Johnson caused the ice to accumulate "unnaturally," by clearing ice or snow, or by some deficiencies in the design of the service station. But, Dr. Varner contends, it is easier for him to succeed under the theory that Johnson was responsible for creating a dangerous condition (i.e. a foreign substance theory), because that theory does not require him to prove that the ice did not accumulate naturally. Rather, he need only prove that the defendant created the dangerous condition with materials related to her business. Thus, while Dr. Varner admits that he fell on ice, he now frames his issue on appeal as whether Johnson (or one of her employees) "created" a dangerous condition by adding water to the pink (foreign) substance, thereby creating the ice. And on appeal, Dr. Varner abandoned any claim that the ice on which he fell resulted from an unnatural accumulation caused by Johnson.

We doubt that Dr. Varner's proposed jury instruction was meant to include a "foreign substance" theory, as opposed to an "unnatural accumulation of ice" theory. The first paragraph of his proposed instruction stated that "[t]he plaintiff claims that he was injured and sustained damage as a result of a fall on an unnatural accu-

mulation of ice . . . . " And all of the stricken subdivisions included references to the theory of "unnatural accumulation." Nonetheless, even assuming that Dr. Varner's proposed jury instruction was broad enough to encompass a theory of negligence premised on Johnson creating the ice by trying to wash away the foreign substance, as explained below, the district court did not err in refusing that instruction.

As noted, Dr. Varner was only entitled to present a jury instruction which was supported by the evidence at trial. To succeed on a theory premised on Johnson creating the dangerous icy condition with a foreign substance, Dr. Varner would be required to "1) show that the foreign material was related to the Defendant's business, and 2) produce some evidence that makes it more likely than not that the Defendant was responsible for its existence." *Lane*, 184 F.3d at 707 (citing the Illinois decisions of *Donoho v. O'Connell's Inc.*, 13 Ill.2d 113, 148 N.E.2d 434, 437 (Ill.1958); *Thompson v. Economy Super Marts, Inc.*, 221 Ill.App.3d 263, 163 Ill.Dec. 731, 581 N.E.2d 885, 888 (Ill.App.Ct.1991)). Dr. Varner failed to present evidence of either element. As to the first element, Dr. Varner presented evidence, through the testimony of James Shipman, that the ice was clear ice and that there was a pinkish or reddish material that was in part of the ice. He presented no evidence identifying the substance, much less identifying the substance as something related to Johnson's business. Moreover, even if we were to assume that the pink substance was some sort of automotive fluid, Dr. Varner still needed to present some evidence that Johnson or her agents were responsible for spilling it on the ground. Here, he utterly failed to present any such evidence. The undisputed evidence merely revealed that the pink substance was located on the ground in the self-service section of the service station. There was absolutely no evidence that Johnson or any of her employees used automotive fluids in that area. Nor is there any evidence, other than mere speculation, that Johnson or any of her employees caused the ice by attempting to wash the area.

The facts of this case resemble those of *Olinger v. Great Atlantic & Pacific Tea Co.*, 21 Ill.2d 469, 173 N.E.2d 443 (Ill.1961). In *Olinger*, the plaintiff, a grocery store customer, slipped and fell. After his fall, the customer noticed a spot of pinkish or light red "thin oil" on the floor with a skid mark running through it. Some of the substance was also on his shoes. *Id.* at 444. Nearby, the store displayed bottles of a red colored cough syrup. *Id.* at 444–45. The Illinois Supreme Court held that this evidence was insufficient to impose liability on the store, stating, "[t]he best that can be said of plaintiff's evidence is that plaintiff slipped on a reddish substance and defendant sold red cough [syrup]. Only by the wildest speculation could it be concluded from these facts that the substance on which plaintiff slipped was [the cough syrup]." *Id.* at 446. In this case, even less can said of Dr. Varner's evidence; all he established is that he slipped on a pinkish substance.

In *Olinger* the Illinois Supreme Court also concluded that the evidence presented failed to create a reasonable inference that the substance was more likely to have been dropped by the defendant's servants than by third persons, where there was "no further evidence . . . offered other than the presence of the substance and the occurrence of the injury, the defendant is entitled to a directed verdict, . . ." *Id.* at 446. Similarly, in this case, Dr. Varner failed to present evidence beyond the mere presence of the pinkish substance and his injury. He presented no evidence that

Johnson or one of her employees was responsible for the pinkish substance.

In response, Dr. Varner cites several cases in which the court held that there was sufficient evidence to create an inference that the spilled material was related to the defendant's business and that the defendant was responsible for its existence. *Howard v. Wal–Mart Stores, Inc.,* 160 F.3d 358 (7th Cir.1998); *Lane v. Hardee's Food Sys., Inc.,* 184 F.3d 705 (7th Cir.1999); *Reed v. Wal–Mart Stores, Inc.,* 298 Ill.App.3d 712, 233 Ill.Dec. 111, 700 N.E.2d 212 (Ill.App.Ct.1998). However, in those cases, unlike this case where we still do not know what the pink substance was, the plaintiffs presented evidence identifying the "foreign material" and demonstrating that the material was associated with the defendant's business. *See, e.g., Howard,* 160 F.3d at 359 (spilled soap was in aisle of grocery store and employees had stocked the shelves that morning); *Lane,* 184 F.3d at 706 (water was on restroom floor where an employee had just mopped); *Reed,* 233 Ill.Dec. 111, 700 N.E.2d at 213 (nail was protruding out of pallets used by store to display garden products). Additionally, and critically as demonstrated by *Olinger,* the plaintiffs in those cases presented evidence that the defendant (or an agent) had used or came in contact with foreign material in the location of the accident. *See supra.* No such evidence was presented in this case.

Because the evidence in this case failed to support Dr. Varner's theory that Johnson created the ice on which he fell, the district court did not err in rejecting Dr. Varner's proposed instruction, whether based on an "unnatural accumulation of ice" or "foreign materials" theory.

### III.

Dr. Varner failed to present evidence showing that the substance on which he fell was related to Johnson's business or that she was responsible for its existence. Therefore, the district court did not err in rejecting Dr. Varner's proposed jury instruction. Accordingly, we AFFIRM.